UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S SCHUSTER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SWINERTON INCORPORATED, et al.,<br><br>    Defendants. | Case No. 3:24-cv-04970-JSC<br><br>**ORDER RE: MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

Plaintiffs bring this Employee Retirement Income Security Act ("ERISA") breach of fiduciary duty action on behalf of a putative class of participants in a retirement savings plan Swinerton Incorporated offered its employees. Defendants move to dismiss the Amended Complaint for failure to state a claim. (Dkt. No. 27.[1]) After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the April 24, 2025 hearing, and DENIES the motion to dismiss.

## FAC ALLEGATIONS

Plaintiffs Michael S. Schuster and Juan C. Del Barco are former Swinerton employees and participants in Swinerton's Section 401(k) defined contribution benefit plan ("the Plan"). (Amended Complaint, Dkt. No. 24 at ¶¶ 23-24, 26-27.) As a defined contribution retirement plan under 29 U.S.C. § 1002(34), "the value of participants investments is 'determined by the market performance of employee and employer contributions, less expenses.'" (*Id*. at ¶ 6 (citation omitted).) Swinerton and its Board are the Plan Sponsors, and the Swinerton 401(k) and Savings Committee is the Plan Administrator; collectively these three entities are the Plan fiduciaries. (*Id*.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

at ¶¶ 2, 7.)

The Plan fiduciaries, as is the practice with defined contribution plans, hired John Hancock Retirement Plan Services ("John Hancock") and Principal Life Insurance Company ("Principal") as service providers, also known as recordkeepers, to deliver retirement plan benefits under the Plan. (*Id.* at ¶¶ 2-3, 39.) John Hancock was the recordkeeper from August 9, 2018 to January 31, 2019 when Principal took over as recordkeeper. (*Id.* at ¶¶ 3-4.) Plaintiffs refer to the fees charged by John Hancock and Principal as "RFK fees" and allege these fees may include "some of all of the following:"

> a. Recordkeeping;
> b. Transaction Processing (which includes the technology to process purchases and sales of participants' assets as well as providing the participants the access to investment options selected by the plan sponsor);
> c. Administrative Services related to converting a plan from one recordkeeper to another recordkeeper;
> d. Participant communications (including employee meetings, call centers/phone support, voice response systems, web account access, and the preparation of other communications to participants, e.g., Summary Plan descriptions and other participant materials);
> e. Maintenance of an employer stock fund;
> f. Plan document services which include updates to standard plan documents to ensure compliance with new regulatory and legal requirements;
> g. Compliance support which would include, e.g., assistance interpreting plan provisions and ensuring the operation of the plan follows legal requirements and the provisions of the plan;
> h. Compliance testing to ensure the plan complies with Internal Revenue nondiscrimination rules;
> i. Various Plan professional services (accounting, audit, appraisal, and legal fees)[;]
> j. Plan-level investment advising, consulting, and management;
> k. Usage fees (for loan fees, hardship withdrawal fees, QDROs, etc.); and
> l. Trustee/custodian services.

(*Id.* at ¶ 42.) These services are "fungible and commoditized, and are standard services provided by all major recordkeepers for ERISA 401(k) plans." (*Id.* at ¶ 43.) This action focuses of the RKA fees paid to John Hancock and Principal related to recordkeeping. (*Id.* a ¶ 48.)

2

**PROCEDURAL HISTORY**

In August 2024, Plaintiffs filed this putative class action against Swinerton, the Swinerton Board of Directors, and the Swinerton 401(k) and Savings Committee alleging two ERISA violations: (1) breach of the duty of prudence by incurring excessive recordkeeping and administrative fees charged by the two Plan recordkeepers, John Hancock and Principal, in violation of 29 U.S.C. § 1104(a)(1)(B); and (2) failure to monitor the Plan Committee fiduciaries responsible paying the excessive recordkeeping and administrative fees. After Defendants moved to dismiss, Plaintiffs filed an Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). (Dkt. Nos. 19, 24.) Defendants then filed a new motion to dismiss which is fully briefed. (Dkt. Nos. 27, 29, 30.)

**JUDICIAL NOTICE**

Judicial notice permits courts to notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201). While a court may take judicial notice of matters of public record, "a court cannot take judicial notice of disputed facts contained in such records." *Id*.

Defendants request judicial notice of 20 documents, including the Swinerton Plan Form 5500s, the Form 5500s of the ten comparator plans, several Department of Labor Publications, and a blog post. (Dkt. No. 28.) Plaintiffs agree the Form 5500s are judicially noticeable. (Dkt. No. 29 at 23.) The Court thus takes judicial notice of the Form 5500s submitted as Exhibits A-P to the Mandhania Declaration. However, the Court cannot take judicial notice of any disputed facts in the Form 5500s. *Khoja*, 899 F.3d at 999-1000. Thus, the Court takes judicial notice of the existence of the documents, but cannot take judicial notice or infer, as Defendants request, that based on the contents of the Form 5500s the comparator plans did not receive the same services or that Plaintiffs incorrectly calculated the fees. Defendants may not "rel[y] on the truth of the contents of the [ ] filings to prove the substance of [their] claims." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015).

3

1    The Court also takes judicial notice of the Department of Labor publications and the blog post which is referenced in the Amended Complaint (Exhibits Q-T) as they are publicly available documents and Plaintiffs have not questioned their authenticity. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (noting judicial notice of publicly available documents such as SEC filings was proper); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (collecting cases taking judicial notice of websites and their contents).

**DISCUSSION**

Defendants insist Plaintiffs have not adequately alleged a breach of the duty of prudence because the claim lacks the required specificity as to Plaintiffs' proposed comparators and relies on a flawed methodology. Both parties agree the failure to monitor claim is a derivative claim, rising or falling with the breach of the duty of prudence claim. (Dkt. No. 27 at 24; Dkt. No. 29 at 24.)

**A.    The Duty of Prudence**

Under ERISA, a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B). The relevant inquiry for a breach of duty of prudence claim is whether a fiduciary, "at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). Fiduciaries must exercise prudence when investment decisions are made in the first instance and must "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (citation omitted).

To survive a motion to dismiss, a party must make sufficient "circumstantial factual allegations" to permit a reasonable inference "from what is alleged that the process was flawed."

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 718 (2nd Cir. 2013). "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). These allegations are evaluated under the *Iqbal/Twombly* pleading standard. *See Hughes v. Nw. Univ*., 595 U.S. 170, 177 (2022); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs "must simply state a plausible claim, rather than one that is likely to succeed." *Produce Pay, Inc. v. Izguerra Produce, Inc*., 39 F.4th 1158, 1166 (9th Cir. 2022) (citing *Ashcroft*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555–56); *see also Smith v. VCA, Inc*., 2022 WL 2037116, at *3 (C.D. Cal. Apr. 6, 2022) ("Because ERISA plaintiffs may generally lack inside information necessary to detail their allegations, [p]laintiffs may rely on circumstantial factual allegations to show a breach of fiduciary duties.").

### 1. Excessive Recordkeeping and Administrative Fees

Plaintiffs contend Defendants breached their duty of prudence in failing to ensure the recordkeeping and administrative fees were reasonable as an initial matter and on an ongoing basis. According to the Amended Complaint, "from the years 2018 through 2023... the Plan paid an effective average annual Total RKA fee of $124 annually per participant, while a reasonable rate for materially similar Total RKA fungible services for a plan the size of Swinerton should have been $43 annually per participant." (Dkt. No. 24 at ¶ 91.) Plaintiffs allege $42 was a reasonable per participant fee given "the Swinerton Plan's features, the commoditized and fungible nature of the Total RKA services provided by the Swinerton Plan's recordkeepers, the number of participants in the Plans (approximately 3,800), and the recordkeeping market." (*Id.* at ¶ 116.) Plaintiffs' calculations are based on a survey of fees paid by ten "comparable plans of similar size, receiving a materially similar level and quality of [ ] fungible services." (*Id.* at ¶¶ 99-102.) The following charts reflect the fees "paid by other comparable plans of similar size, receiving materially similar level and quality" of services:

**Comparable Plans' Total RKA Fees Based on Publicly-Available Information - Form 5500**
(Price calculations are based on 2018 Form 5500 information or the most recent Form 5500 if 2018 is not available)

| Plan | Participants | Assets | Total RKA Fee | Total RKA Fee /pp | Recordkeeper |
|---|---|---|---|---|---|
| Weil, Gotshal & Manges Section 401(K) Savings and Investment Plan | 2,564 | $469,229,171 | $146,518 | $57 | Transamerica |
| Genesco Salary Deferral Plan | 2,695 | $152,254,940 | $138,207 | $51 | Great-West |
| Swinerton Plan | 3,089 | $313,540,263 | $342,767 | $111 | John Hancock/Principal |
| IBERIABANK Corporation Retirement Savings Plan | 3,193 | $150,049,361 | $127,723 | $40 | Prudential |
| Under Armour 401(K) Plan | 4,485 | $179,198,512 | $89,400 | $20 | T. Rowe Price |
| Sound Physicians 401(K) Plan | 4,970 | $218,520,712 | $161,063 | $32 | USICG |

**Comparable Plans' Total RKA Fees Based on Publicly Available Information from Form 5500**
(Price calculations are based on 2021 Form 5500 information or the most recent Form 5500 if 2021 is not available)

| Plan | Participants | Assets | Total RKA Fee | Total RKA Fee /pp | Recordkeeper |
|---|---|---|---|---|---|
| Ellucian Retirement Plan | 3,208 | 635,664,530 | $156,749 | $49 | Vanguard |
| AARP Employees 401K Plan | 3,499 | 889,874,231 | $147,357 | $42 | T. Rowe Price |
| Alaska Airlines Inc. AlaskaSaver Plan | 3,867 | 688,522,635 | $174,317 | $45 | Vanguard |
| Swinerton Plan 2021 Fee | 3,912 | $761,731,091 | $566,853 | $145 | John Hancock/Principal |
| Stop & Shop Supermarket Retirement Savings Plan | 4,023 | 935,648,024 | $156,415 | $39 | Fidelity |
| West Pharmaceutical Services, Inc. 401(K) Plan | 4,959 | 514,861,682 | $184,439 | $37 | Vanguard |

(Dkt. No. 24 at ¶¶ 99-100.[2])

Defendants move to dismiss arguing Plaintiffs' analysis does not plausibly support their claim because the sample size is too small and Plaintiffs fail to compare whether the plans provide same specific services; that is, Defendants insist Plaintiffs must support their allegations with an apples to apples comparison of services. Defendants' arguments overreach at the pleading stage.

Plaintiffs plausibly allege Defendants failed to administer the fees in a prudent manner.

---

[2] Because the fees offered are good for three years, Plaintiff's provide sampling for 2018 and 2021. (Dkt. No. 24 at ¶ 102.)

Plaintiffs allege between 2018 and 2023 Plan participants paid on average $124 for recordkeeping and administrative fees—nearly triple the $43 paid on average for participants in comparable plans. (Dkt. No. 24 at ¶ 91.)   While the comparator plans use different service codes on their Form 5500, both the Swinerton Plan and the comparable plans all list "[r]ecordkeeping and information management (computing, tabulating, data processing) (Code 15)" and/or "recordkeeping fees (Code 64)."  (Dkt. No. 24 at ¶¶ 48-53.)  "The different service codes do not undermine [Plaintiffs] comparisons because they apparently overlap." *Mator v. Wesco Distribution, Inc*., 102 F.4th 172, 186 (3d Cir. 2024) ("the record does not reveal the codes' precise meanings, nor whether all plans define the codes consistently. But given that all the plans received some portion of an overlapping constellation of recordkeeping services, the comparisons help nudge the [Plaintiffs'] claims across the line from possible to plausible.").  Defendants contend *Mator* is inapposite because the plaintiffs alleged that one of the comparator plans used the exact same service codes.  But, so too here as to the service codes Principal used and those used by the comparator plan IBERIABANK Corporation Retirement Savings Plan.  (*Compare* Dkt. No. 24 at ¶ 48 *with* ¶ 52.)

Defendants' reliance on *Singh v. Deloitte LLP*, 123 F.4th 88, 92 (2d Cir. 2024), is unpersuasive as the allegations there—unlike here—lacked information on the number of services provided either by the plan at issue or the alleged comparators and did not allege what level of service was provided or whether the comparator plans provided a similar quality of service.  Here, in contrast, Plaintiffs allege "there is nothing in these Notes to Financial Statements to suggest that there is anything exceptional, unusual, or customized, about the Total RKA services provided to the Swinerton Plan participants by John Hancock or Principal" as compared to the comparator plans.  (*Id*. at ¶¶ 46-47; *see also* ¶ 56 ("The Swinerton Plan provided participants all the commoditized and fungible RKA services provided to all other very large 401(k) plan participants. The quality or type of RKA services provided by competitor recordkeepers are comparable to that provided by John Hancock and Principal.").

"Though some courts at this stage have opted to analyze whether plaintiffs have offered a proper 'apples to apples' comparison for complaints of excessive fees, it is not required in the

7

Ninth Circuit." *In re Sutter Health ERISA Litigation*, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (internal citation omitted). Rather, "[i]t is sufficient at this stage that Plaintiffs allege specific facts supporting their claims that the Plan's fees and [costs] were excessive for its size." *Zimmerman v. Cedars-Sinai Med. Ctr.*, No. 5:23-CV-01124-JLS-SP, 2024 WL 1135773, at *7 (C.D. Cal. Feb. 18, 2024). "Plaintiffs need not provide even more granular, micro-level "apples to apples" comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss." *Nagy v. CEP Am., LLC*, No. 23-CV-05648-RS, 2024 WL 2808648, at *4 (N.D. Cal. May 30, 2024); ); *see also Coppel v. SeaWorld Parks & Ent., Inc.*, No. 3:21-CV-01430-RSH-DDL, 2023 WL 2942462, at *14 (S.D. Cal. Mar. 22, 2023) (collecting cases concluding allegations comparing "similar plans involving similar numbers of participants, [providing] materially similar services" sufficient to state a claim of imprudence based on excessive recordkeeping fees).

Defendants' other arguments are likewise unavailing. Defendants contend the switch from John Hancock to Principal in 2019 demonstrates the Committee was not "asleep at the wheel" and is an admission of Defendants' prudence which means the claim fails as a matter of law. (Dkt. No. 27 at 13.) But, Defendants' argument improperly requires the Court to draw inferences in their—rather than Plaintiffs'—favor. As the Amended Complaint alleges the recordkeeping fees actually increased when the Plan switched to Principal, it is more plausible the reason for the switch had nothing to do with Defendants seeking to mitigate excessive fees. Nor is there support for Defendants' argument that Plaintiff's sample size of five plans for 2018 and five plans for 2021 is too small. *See, e.g.*, *Tsui v. Universal Servs. of Am., LP*, No. 8:22-CV-01158-JWH-JDE, 2024 WL 4868293, at *3 (C.D. Cal. Feb. 1, 2024) ("In a chart depicting the RK&A fees of [eight] comparable plans to Plaintiffs' Plan, based upon size of plan participants, assets, and RK&A fees, Plaintiffs adequately showed that Defendants breached their duty of prudence.").

Finally, Defendants challenge Plaintiffs' methodology for calculating the fees as fatally flawed asking the Court to examine the Form 5500s for the comparator plans to assess the validity of Plaintiffs' alleged calculations. While the Court has taken judicial notice of the Form 5500s, the Court cannot take judicial notice of any disputed facts contained therein. *See Khoja v.*

8

*Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018); *see also Valenzuela v. Advantage Sales & Mktg., LLC*, No. 8:24-CV-00460, 2024 WL 5316279, at *2 (C.D. Cal. Nov. 18, 2024) ("Defendants improperly ask the Court to infer from [the Form 5500s] that comparator plans received different services or Plaintiff incorrectly calculated the plans' fees"). Plaintiffs have identified comparators offering substantially similar services. (Dkt. No. 24 at ¶ 114 ("The Total RKA services received by these comparator plans were materially similar to the Total RKA services received by the Swinerton Plan in the form of recordkeeping, trustee, loan processing, hardship distribution, and other administrative fees, based on the highly similar nature of such services in the marketplace and a comparison of the participant fee disclosures of the comparator plans to the services received by the Swinerton Plan."). "Although Defendants may prevail at summary judgment or trial on this claim by showing that [Defendants] provided services that added value beyond Plaintiffs' chosen comparators, at the pleading stage Plaintiffs have succeeded in stating a claim for breach of the fiduciary duty of prudence." *Tsui*, 2024 WL 4868293, at *4; *see also Smith v. VCA, Inc*., No. CV 21-9140-GW-AGRX, 2022 WL 2037116, at *4 (C.D. Cal. Apr. 6, 2022) ("Given that there is not a set formula for calculating the per participant recordkeeping fee, the Court accepts Plaintiffs' alleged calculation as plausible at the pleading stage.").

### B.     Duty to Monitor

Both parties agree the failure to monitor claim is a derivative claim. (Dkt. No. 27 at 24; Dkt. No. 29 at 24.) Because Plaintiffs have plausibly alleged a breach of the duty of prudence as discussed above, they have also plausibly alleged their derivative breach of the duty to monitor.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to dismiss. The answer is due in 21 days. The Court sets an initial case management conference for June 11, 2025 at 2:00 p.m. via videoconference. An initial joint case management conference statement is due June 4, 2025.

//

//

This Order disposes of Docket No. 27.

**IT IS SO ORDERED.**

Dated: April 8, 2025

JACQUELINE SCOTT CORLEY
United States District Judge