UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL S SCHUSTER, et al.,
Plaintiffs,
v.
SWINERTON INCORPORATED, et al.,
Defendants.

Case No. 3:24-cv-04970-JSC

**ORDER RE: PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. No. 68

Plaintiffs filed this Employee Retirement Income Security Act ("ERISA") breach of fiduciary duty action on behalf of a putative class of participants in a retirement savings plan Swinerton Incorporated offered its employees. In March 2026, the parties notified the Court they had reached a settlement and the now pending motion for preliminary approval of the class action settlement followed. (Dkt. Nos. 61, 68.[1]) Having considered the parties' submissions, including supplemental submissions, and having had the benefit of oral argument on September 11, 2026, the Court GRANTS the motion for preliminary approval.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background and incorporates its prior discussion by reference. (Dkt. No. 36 at 1-2.)

## THE SETTLEMENT AGREEMENT

### A. The Settlement Class

The Agreement defines the Settlement Class as

> all participants and beneficiaries of the Plan, at any time during the

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

> Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a QDRO who was a participant in the Plan at any time during the Class Period.

(Dkt. No. 68-6, Settlement Agreement at § 1.10.) Defendants are excluded from the Class.

**B. Payment Terms**

Under the Settlement Agreement, Defendants will pay $497,500 ("Settlement Fund"). (*Id.* at § 1.45.) The following amounts may be deducted from the Settlement Fund:

1. Notice and Administration Costs: up to $50,000 (Dkt. No. 68-16, Simmons Decl. at ¶ 51; Dkt. No. 76 at 10);
2. Litigation Expenses: up to $25,000 (Dkt. No. 68-6 at § 7.2(a));
3. Attorneys' Fees: 25% of the Settlement Fund: ($124,375) (*Id.*);
4. Costs of the Independent Fiduciary (*Id*. at §§ 1.29, 1.30, 2.6, 3.1(j)(5);
5. "Taxes and Tax-Related Costs" (*Id*. at § 3.1(j)(6)); and
6. Service Awards of up to $5,000 per Class Representative (*Id*. at § 7.1).

The remaining amount, the "Net Settlement Amount" will be divided in pro rata shares based on the balance in each class member's account as set forth in a specified plan of allocation. (*Id*. at § 1.37; Dkt. No. 68-9 at 2.)

**C. Scope of the Release**

Any settlement class member who does not submit a timely request for exclusion releases:

> any and all actual or potential claims (including any Unknown Claims), actions, causes of action, demands, rights, obligations, damages, and liabilities (including claims for attorneys' fees, expenses, or costs), whether accrued or not, whether arising under federal, state, or local law, whether by statute, regulation, contract, tort, equity, or otherwise, whether brought directly or indirectly, in an individual or representative capacity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, for monetary, injunctive, equitable, and any other relief against the Defendant Released Parties and Defendants' Counsel through the date the Court enters the Final Approval Order and Judgment:
>
> a) That were asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, occurrences or the conduct alleged or asserted in the Action or could have been alleged or asserted in the

> Action, whether or not pleaded in the Complaint, including, but not limited to, those that arise out of, relate to, are based on, or have any connection with: (1) the selection, monitoring, oversight, retention, fees, expenses, or service providers, including without limitation, its administrative and/or recordkeeping service providers; (2) the selection, nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries; (3) fees, costs, or expenses charged to, paid, or reimbursed by the Plan or Plan participants; (4) the services provided to the Plan or the cost of those services, including without limitation, disclosures or failures to disclose information regarding those services; (5) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties relating to the Plan's, or service providers; (6) Plan sponsor or Plan fiduciary decisions to pay or not pay fees for the Plan's recordkeeping and administrative services; and/or (7) any assertions with respect to any fiduciaries or service providers of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or;
>
> b) That would be barred by *res judicata* or collateral estoppel had they been fully litigated and resulted in a final judgment, or based on entry of the Final Approval Order and Judgment; or
>
> c) That relate to the direction to calculate, the calculation of, or the method or manner of allocation of the Settlement Fund in accordance with the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or
>
> d) That relate to the approval by the Independent Fiduciary of the Settlement, except for claims brought against the Independent Fiduciary alone; and
>
> e) "Released Claims" does not include any claims that the Class Representative or the Settlement Class have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final. The Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement.

(Dkt. No. 78-4 at § 1.42.[2])

**D. Notice**

Plaintiffs selected Analytics Consulting LLC as the Settlement Administrator following a competitive bidding process. (Dkt. No. 68-5, Secunda Decl. at ¶¶ 28-30.) Analytics will send "notice to the email address on file with the Plan's recordkeeper for all Settlement Class Members,

[2] The parties revised the language of the release following concerns the Court raised at the preliminary approval hearing. (Dkt. No. 78 at ¶ 5.)

United States District Court
Northern District of California

or if no email address is on file, then the last known address of each Settlement Class Member." (Dkt. No. 68-16, Simmons Decl. at ¶ 12.) Analytics will also create a settlement website and maintain a toll-free telephone number for questions. (*Id*. at ¶ 13.)

**E. Objections**

While Settlement Class Members can file a written objection to any part of the settlement and/or the request for attorneys' fees and costs, they are not permitted to exclude themselves from the class because it is a Rule 23(b)(1) class. (Dkt. No. 68-6 at §§ 2.3, 2.4.) *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out."). The deadline for Settlement Class Members to submit an objection is at least two weeks before the final approval hearing. (Dkt. No. 68-10 at 5.)

**DISCUSSION**

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

**II. CLASS CERTIFICATION**

A court may preliminarily certify a settlement class if the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23.

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b).

**A. Rule 23(a)**

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous. "There are approximately 6,000 participants in the Plan, made up of approximately 4,000 current participants with balances, and 2,000 former participants during the Class Period." (Dkt. No. 68-5, Secunda Decl. at ¶ 3.)

Second, the commonality requirement is satisfied because all class members share common questions regarding administration of the plan including "whether the Plan's RKA were excessive; (2) whether Defendants breached their fiduciary duties to the Plan; and (3) whether the Plan suffered losses from the fiduciary breaches." (Dkt. No. 68-1 at 18) S*ee Munro v. Univ. of S. California*, No. 2:16-CV-06191-VAP-EX, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) (because "plaintiffs are suing on behalf of the Plans, the centralized administration of which is common to all putative class members" "[t]he facts that will prove or disprove the allegations as to the Plans' management are the same for every putative class member."). The commonality element of Rule 23(a)(2) "requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B. v. Hawaii State Dep't of Educ*., 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up).

Third, the typicality requirement is satisfied because Plaintiffs challenge one course of conduct—the management of the plan. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B.*, 30 F.4th at 839 (cleaned up).

Finally, adequacy exists because there is no evidence Plaintiffs and Plaintiffs' counsel have any conflicts of interest with the proposed class, or that Plaintiffs and Plaintiffs' counsel will not vigorously prosecute the case on behalf of the class.

**B. Rule 23(b)**

In addition to satisfying the four Rule 23(a) requirements, the proposed class must satisfy one of the Rule 23(b) requirements. "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp*., 254 F.R.D. 102, 111 (N.D. Cal. 2008). Plaintiffs contend certification is appropriate either under Rule 23(b)(1)(A) or Rule 23(b)(1)(B). (Dkt. No. 68-1 at 18-19.) Under Rule 23(b)(1)(A), class certification is proper where separate actions by individual class members would risk "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Plaintiffs allege almost 6,000 individuals are or were participants of the Swinerton Plan, and if each of them filed suit, this would create a high risk of "incompatible standards of conduct" for Defendants absent certification. *See Kana*wi, 254 F.R.D. at 111. Certification under Rule 23(b)(1)(A) is thus proper.

Because the Court finds certification under Rule 23(b)(1)(A) is proper, it need not address whether Plaintiffs also satisfy Rule 23(b)(1)(B). *See Reyes*, 2015 WL 5569462 at *4 (declining to address whether plaintiffs also satisfied Rule 23(b)(1)(B) or Rule 23(b)(2) where the court determined plaintiffs had satisfied Rule 23(b)(1)(A)); *see also Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 164 n.226 (N.D. Cal. 2015).

***

Because the proposed class satisfies Rule 23(a) and Rule 23(b)(1), the Court grants Plaintiffs' motion for conditional certification.

**III. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT**

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

United States District Court
Northern District of California

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A. Whether the Settlement is Fair, Adequate, and Reasonable

#### 1. Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*. The settlement here was reached after a full-day mediation session with an experienced ERISA mediator. (Dkt. No. 68-5, Secunda Decl. at ¶¶ 9-10; Ex. 2.)

This factor thus weighs in favor of preliminary approval.

#### 2. Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetoot*h, 654 F.3d at 947.

The only preferential treatment is Plaintiffs' request for up to $5,000 for each Class Representative as a service award. (Dkt. No. 68-1 at 10-11.) The Court will defer ruling on the appropriateness of this award until final approval. At this stage, there is no indication the award in general constitutes "preferential treatment" such that it would defeat preliminary approval.

#### 3. Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case. The Settlement Agreement provides for a Settlement Fund of $497,500. (Dkt. No. 68-6, Settlement Agreement at § 1.45.) Plaintiffs estimate this amount represents 22.1% of the total estimated loses

and "[t]his percentage recovery is consistent with, or better than, many similarly settled ERISA class actions alleging similar claim." (Dkt. No. 68-1 at 14 (collecting cases).)

The Settlement Fund will be distributed to class members based on the "relative size and duration of each Settlement Class Member's investments in the Plan during the Class Period." (Dkt. No. 76 at 4.) Under the Plan of Allocation, the Settlement Administrator will calculate a weighted sum of each Settlement Class Member's Plan account balances and divide that amount by the aggregate weighted balances of all eligible Settlement Class Members, and multiply that percentage by the Net Settlement Amount. (*Id.*) Thus, participants who had more assets exposed to the alleged excessive fees for longer periods of time will recover more under the settlement. While the Settlement Administrator does not have the account balance information yet, it created a model of pro rata distribution which provided the following estimates of recovery:

> Among Current Participants, the estimated average distribution is $47.40**,** the median is $16.17, and the estimated range is $0.01 to $718.02. Among Former Participants, the estimated average distribution is $80.34, the median is $57.64, and the estimated range is $25.02 to $434.19**.**

(Dkt. No. 76-2, Supp. Simmons Decl. at ¶ 10.)

Given the risks of continued litigation, the Court concludes this factor also weighs in favor of preliminary approval.

#### 4. Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. Here, while the Court initially highlighted some concerns regarding the Settlement Agreement, Plaintiffs' supplemental submissions address these concerns such that the Court finds no obvious deficiencies that would preclude preliminary approval. (Dkt. Nos. 75, 76.)

* * *

Having weighed the relevant factors, the Court preliminarily finds the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## IV. CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

At the preliminary approval hearing, the Court advised the parties the proposed class notice did not adequately notify the class of their right to object to the requests for attorneys' fees, costs, and class representative payments. Plaintiffs have now submitted a revised long form notice, postcard notice, and email notice addressing the Court's concerns. (Dkt. No. 80.) These revised long-form and summary notices comply with the notice requirements under Rule 23(c). The revised long-from notice describes the allegations and claims in plain language, defines the Settlement Class, includes contact information for Class Counsel and the Settlement Administrator, and summarizes the settlement amount. (Dkt. No. 80-2.) It also describes the Plan of Allocation and the options available to class members, including instructions for filing an objection to the settlement or the motion for attorneys' fees, costs, and the class representative payments. The revised long-form notice informs class members that receiving a share of the class settlement will release certain claims against certain parties and informs class members they may appear at the final fairness hearing in person or through an attorney. It directs class members to a website with more information. Finally, the notice adequately advises Settlement Class Members about how they can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose class counsel's fee motion").

In sum, these procedures appear sufficient to ensure that Settlement Class Members receive adequate notice of the settlement and an opportunity to object. Accordingly, the Notices and notice plan support preliminary approval.

**V. ATTORNEYS' FEES AND COSTS**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho*

*v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement provides Class Counsel may file a motion for attorneys' fees and costs seeking 25 percent of the Settlement Amount in attorneys' fees, and no more than $25,000 in costs. (Dkt. No. 68-6, Settlement Agreement at § 7.2(a)). Class Counsel's current lodestar is $150,190 with an estimated lodestar of $177,190 through final approval so an award of 25 percent of the Settlement Fund ($124,375) represents a negative multiplier.

Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice). Counsel shall also submit detailed information in support of their request for litigation expenses so the Court can determine whether such costs are reasonable expenses incurred for the benefit of the class.

**CONCLUSION**

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Class:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the current and former members of the Swinerton Health Retirement Committee during the Class Period.

2. Michael S. Schuster and Juan C. Del Barco are conditionally appointed as the Class Representatives.

3. The Court conditionally appoints Walcheske & Luzi, LLC and Schneider Wallace Cottrell Kim LLP as Class Counsel for the Settlement Class.

4. The Court appoints Analytics as the Settlement Administrator.

5. Within 45 days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the notice plan.

6. Plaintiffs shall file with the Court of each type of notice with the Court within 10 days of dissemination of notice.

7. Class Counsel shall file a motion for attorneys' fees and costs by December 3, 2026.

8. The deadline for class members to submit an objection to the settlement or motion for attorneys' fees and costs is January 14, 2027.

9. Plaintiffs shall file their Motion for Final Approval by January 21, 2027. The motion for final approval shall address the final approval guidelines in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, in the order the guidelines are presented on the website. As reflected in the Guidance, the Court will require a post-distribution accounting within 21 days after the distribution of settlement funds.

10. The parties shall appear before this Court for a final approval hearing on February 25, 2027 at 9:00 a.m. via Zoom video.

**IT IS SO ORDERED.**

Dated: October 1, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge